UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ARES BARRETO,

                                   Plaintiff,

                                                                    9:24-CV-0969
v.                                                                  (FJS/ML)

N. RIZZO, Correctional Officer (R.C.C.F.),

                                   Defendant.

_____

APPEARANCES:                                           OF COUNSEL:

ARES BARRETO
  *Pro Se* Plaintiff
190 Hoosick Street
Troy, New York 12180
(last known address)

JOHNSON & LAWS, LLC                            GREGG JOHNSON, ESQ.
  Counsel for Defendant                            OLIVIA REINHARDT,
646 Plank Road, Suite 205                         ESQ.
Clifton Park, New York 12065

MIROSLAV LOVRIC, United States Magistrate Judge

### **REPORT and RECOMMENDATION**

Currently before the Court, in this civil rights action filed by Ares Barreto ("Plaintiff")

against N. Rizzo ("Defendant"), is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 37

and 41(b) and motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 31.)  For

the reasons set forth below, I recommend that Defendant's motion to dismiss be granted.

## I.    RELEVANT BACKGROUND

### A.    Procedural History

On August 7, 2024, Plaintiff commenced this action by the filing of a Complaint, accompanied by a motion for leave to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 1, 2.)

On September 16, 2024, Senior United States District Judge Frederick J. Scullin Jr. granted Plaintiff's IFP application and ordered that Plaintiff's failure to protect claim pursuant to the Fourteenth Amendment against Defendant survived *sua sponte* review and required a response.  (Dkt. No. 4.)

On September 16, 2024, Plaintiff filed a notice of change of address.  (Dkt. No. 6.)  The Clerk of the Court re-sent Judge Scullin's Order dated September 16, 2024, to Plaintiff's new address.  (Docket entry dated 09/17/2024.)

On April 9, 2025, Defendant filed a motion to compel.  (Dkt. No. 20.)  The Court directed Plaintiff to file a response to Defendant's motion and scheduled an on the record hearing for May 2, 2025.  (Dkt. No. 22.)

The Court held a hearing on May 2, 2025, and Plaintiff failed to appear or file a response to Defendant's motion to compel.  (Minute entry dated 05/02/2025.)  Plaintiff was "**ADVISED THAT FAILURE TO COMPLY WITH COURT ORDERS, OR FAILURE TO ENGAGE IN THE DISCOVERY PROCESS, OR FAILURE TO APPEAR FOR DEPOSITION, OR FAILURE TO KEEP UPDATED WITH THE COURT IN WRITING HIS ADDRESS AND CONTACT INFORMATION, MAY RESULT IN SANCTIONS BEING IMPOSED PURSUANT TO FED. R. CIV. P. 37 & 41, INCLUDING DISMISSAL OF THE CASE.**" (*Id.*; *accord* Dkt. No. 23.)  The Court scheduled a hearing for June 6, 2025, and directed that Plaintiff appear in person for the hearing.  (Dkt. No. 23.)

On May 30, 2025, the Court received returned as undeliverable the Minute Entry dated 05/02/2025, the Text Order dated May 2, 2025, and the Notice of Hearing dated May 2, 2025. (Dkt. No. 25.)

On June 6, 2025, the Court held a hearing and Plaintiff failed to (1) appear for the hearing, (2) file a response to the motion to compel, (3) file a status report as directed, and (4) comply with his discovery obligations as set forth by the Court.  (Minute Entry dated 06/06/2025.)  Plaintiff was "**ADVISED THAT FAILURE TO COMPLY WITH COURT ORDERS, OR FAILURE TO ENGAGE IN THE DISCOVERY PROCESS, OR FAILURE TO APPEAR FOR DEPOSITION, OR FAILURE TO KEEP UPDATED WITH THE COURT IN WRITING HIS ADDRESS AND CONTACT INFORMATION, MAY RESULT IN SANCTIONS BEING IMPOSED PURSUANT TO FED. R. CIV. P. 37 & 41, INCLUDING DISMISSAL OF THE CASE.**"  (*Id.*; *accord* Dkt. No. 26.)  The Court scheduled a hearing for June 30, 2025, and directed that Plaintiff appear in person for the hearing.  (Dkt. No. 26.)

On June 25, 2025, the Court received returned as undeliverable the Minute Entry dated 06/06/2025, and the Text Order dated June 6, 2025.  (Dkt. No. 27.)

On June 30, 2025, the Court held a hearing and Plaintiff failed to (1) appear for the hearing, (2) file a response to the motion to compel, (3) file a status report as directed, and (4) comply with his discovery obligations as set forth by the Court.  (Minute Entry dated 06/30/2025.)  Plaintiff was "**ADVISED THAT FAILURE TO COMPLY WITH COURT ORDERS, OR FAILURE TO APPEAR FOR COURT PROCEEDINGS, OR FAILURE TO ENGAGE IN THE DISCOVERY PROCESS, OR FAILURE TO APPEAR FOR DEPOSITION, OR FAILURE TO KEEP UPDATED WITH THE COURT IN WRITING**

**HIS ADDRESS AND CONTACT INFORMATION, MAY RESULT IN SANCTIONS BEING IMPOSED PURSUANT TO FED. R. CIV. P. 37 & 41, INCLUDING DISMISSAL OF THE CASE.**" (*Id*.; *accord* Dkt. No. 28.)  The Court scheduled a hearing for July 31, 2025, and directed that Plaintiff appear in person for the hearing.  (Dkt. No. 28.)

On July 31, 2025, the Court held a hearing and Plaintiff failed to (1) appear for the hearing, (2) file a response to the motion to compel, (3) file a status report as directed, and (4) comply with his discovery obligations as set forth by the Court.  (Minute Entry dated 07/31/2025.)  Plaintiff was "**ADVISED THAT FAILURE TO COMPLY WITH COURT ORDERS, OR FAILURE TO APPEAR FOR COURT PROCEEDINGS, OR FAILURE TO ENGAGE IN THE DISCOVERY PROCESS, OR FAILURE TO APPEAR FOR DEPOSITION, OR FAILURE TO KEEP UPDATED WITH THE COURT IN WRITING HIS ADDRESS AND CONTACT INFORMATION, MAY RESULT IN SANCTIONS BEING IMPOSED PURSUANT TO FED. R. CIV. P. 37 & 41, INCLUDING DISMISSAL OF THE CASE.**" (*Id*.; *accord* Dkt. No. 29.)  The Court scheduled a hearing for September 15, 2025, and directed that Plaintiff appear in person for the hearing.  (Dkt. No. 29.)  In addition, the Court directed Plaintiff to show cause, in writing by September 5, 2025, why this case should not be dismissed.  (*Id*.)

On September 15, 2025, the Court held a hearing and Plaintiff failed to (1) appear for the hearing, (2) file a response to the motion to compel, (3) file a status report as directed, (4) comply with his discovery obligations as set forth by the Court, and (5) show cause why the action should not be dismissed.  (Minute Entry dated 09/15/2025.)  Plaintiff was "**ADVISED THAT FAILURE TO COMPLY WITH COURT ORDERS, OR FAILURE TO APPEAR FOR COURT PROCEEDINGS, OR FAILURE TO ENGAGE IN THE DISCOVERY**

**PROCESS, OR FAILURE TO APPEAR FOR DEPOSITION, OR FAILURE TO KEEP UPDATED WITH THE COURT IN WRITING HIS ADDRESS AND CONTACT INFORMATION, MAY RESULT IN SANCTIONS BEING IMPOSED PURSUANT TO FED. R. CIV. P. 37 & 41, INCLUDING DISMISSAL OF THE CASE.**" (*Id.*)  The Court authorized Defendant to file a dispositive motion in this matter.

On October 16, 2025, Defendant filed the pending motion.  (Dkt. No. 31.)  The deadline for Plaintiff to file a response to Defendant's motion was November 13, 2025.  (Dkt. No. 33.)  On November 17, 2025, the Court *sua sponte* granted Plaintiff an extension of time until December 17, 2025, to file a response to Defendant's motion.  (Dkt. No. 34.)  Plaintiff was cautioned that his "failure to file any response may result in the motion being granted since the Court will not have the benefit of Plaintiff's response to consider in making its decision."  (*Id.*)  On January 14, 2026, the Court again *sua sponte* granted Plaintiff an extension of time until February 17, 2026, to file a response to Defendant's motion.  (Dkt. No. 35.)

To date, Plaintiff has not responded to Defendant's motion.  (*See generally* docket sheet.)

### B.    Defendant's Motion

Generally, in support of his motion to dismiss and motion for summary, Defendant asserts the following five arguments: (1) Defendant is entitled to dismissal of the Complaint based on Plaintiff's disregard of this Court's orders and his failure to prosecute; (2) Plaintiff failed to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA"); (3) the actions or inactions of Defendant were not violative of the Fourteenth Amendment because (a) the undisputed facts to do not support Plaintiff's failure to protect claim, and (b) the undisputed facts do not support Plaintiff's implied failure to intervene claim; (4) in

5

the alternative, Defendant is entitled to qualified immunity; and (5) in the alternative, Plaintiff is not entitled to punitive damages.  (*See generally* Dkt. No. 31, Attach. 17.)

## II.        LEGAL STANDARDS GOVERNING A MOTION TO DISMISS FOR FAILURE TO PROSECUTE

For reasons that are self-evident, this Court's local rules require that "[a]ll attorneys of record and *pro se* litigants immediately notify the Court of any change of address."  N.D.N.Y. L.R. 10.1(c)(2) (emphasis omitted).  As one court has observed with respect to this requirement,

> [i]t is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions.  It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail.  In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries.  Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cnty. Corr. Facility Staff*, 95-CV-1525, 1996 WL 172699, at *1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King*, 84-3310, 1985 U.S. App. LEXIS 31736, at *4 (5th Cir. Mar. 19, 1985)).

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, order dismissal of an action based on a plaintiff's failure to prosecute or comply with an order of the court.[1]  Fed. R. Civ. P. 41(b); *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014); *Rodriguez v. Goord*, 04-CV-0358, 2007 WL 4246443, at *2 (N.D.N.Y. Nov. 27, 2007)

---

[1]      Although Rule 41(b) grants a defendant leave to move for dismissal based on a plaintiff's failure to prosecute or comply with a court order (rather than grant the court explicit authority to dismiss *sua sponte*), "courts retain the 'inherent power' to *sua sponte* 'clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief.'"  *Rodriguez v. Goord*, 04-CV-0358, 2007 WL 4246443, at *2 (N.D.N.Y. Nov. 27, 2007) (Scullin, J.) (quoting *link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962)).  Indeed, the local rules of this Court recognize this authority and mandate that the Court exercise it under certain circumstances.  *See, e.g.*, N.D.N.Y. L.R. 41.2(a).

(Scullin, J. adopting report and recommendation by Lowe, M.J.). That discretion should be exercised when necessary to "achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). In addition, it should be exercised with caution and restraint because dismissal is a particularly harsh remedy, especially when invoked against a *pro se* plaintiff. *Baptiste*, 768 F.3d at 216-17.

A determination of whether to dismiss an action pursuant to Rule 41(b) is informed by consideration of the following five specific factors: (1) the duration of the plaintiff's failure to comply with court orders; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in a fair chance to be heard; and (5) whether the imposition of sanctions less drastic than dismissal is appropriate. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (citing *Jackson v. City of New York*, 22 F.3d 71, 74 (2d Cir. 1994); *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988)); *see also Shannon v. Gen. Elec.Co.*,186 F.3d 186, 193-94 (2d Cir. 1999); *Lebarron v. Warren Cnty. Sheriff's Office*, 13-CV-1572, 2016 WL 2621796, at *4, n.3 (N.D.N.Y. Apr. 6, 2016) (Hummel, M.J.) (quoting *Barney v. Consol. Edison Co. of New York*, 99-CV-0823, 2006 WL 4401019, at *16 (E.D.N.Y. July 19, 2006)) ("'[C]ourts consider the same factors applicable to Rule 41(b) when considering dismissal pursuant to Rule 37.'"), *report and recommendation adopted*, 2016 WL 2636293 (N.D.N.Y. May 6, 2016) (Suddaby, C.J.).

Rule 37(d) of the Federal Rules of Civil Procedure provides that if an individual fails to appear at his own deposition after having received proper notice, the court may take various steps to sanction the disobedient party. Fed. R. Civ. P. 37(d)(1)(A)(i). Section 37(d) cross references Rule 37(b)(2)(A)(v), which also authorizes the court to dismiss an action for failure to

comply with a discovery order.  The imposition of sanctions under Rule 37 is within the discretion of the district court, and the sanction of dismissal is a harsh remedy to be used "only in extreme situations."  *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1990).  In order to impose such a severe sanction, the court must find willfulness, bad faith, or fault on the individual from whom discovery is sought.  *Bobal*, 916 F.2d at 764.  The party in question, particularly a *pro se* litigant, must have had prior notice that violation of the court's order would result in dismissal with prejudice.  *Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995).

## III.    ANALYSIS

After carefully considering the matter, I recommend that Defendant's motion to dismiss for failure to prosecute be granted for the reasons stated in his memorandum of law.  (Dkt. No. 31, Attach. 17 at 14-16.)  The following is intended to supplement—not supplant—those reasons.

Plaintiff was specifically informed of the requirement that he update his address with the Clerk of the Court or risk dismissal of his lawsuit, when he was provided with (1) Senior Judge Scullin's decision and order dated September 16, 2024 (Dkt. No. 4 at 14), (2) the undersigned's order of May 2, 2025 (Dkt. No. 23), (3) the undersigned's order of June 6, 2025 (Dkt. No. 26), (4) the undersigned's order of June 30, 2025 (Dkt. No. 28), and (5) the undersigned's order of July 31, 2025 (Dkt. No. 29).

Moreover, despite the fact that Plaintiff has previously notified the Court of his address change (Dkt. No. 6), based on the return of mail sent to Plaintiff by the Court (Dkt. Nos. 25, 27), it appears that Plaintiff has failed to provide notification of his most recent address change to the Court and Defendant's counsel.

Based upon careful consideration of the foregoing relevant factors, I conclude that dismissal of Plaintiff's Complaint at this juncture is warranted. The inability of the Court to communicate with Plaintiff is due solely to his failure to prosecute or to provide the Court with his updated address. Plaintiff's failure to proceed in this action has a substantial injurious effect on the litigation, and there is no end to Plaintiff's inaction in sight.

Pursuant to Local Rule 41.2(a), "the plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). The last contact that Plaintiff had with the Court was on November 22, 2024—over seventeen months ago—when he filed a motion seeking appointment of counsel. (Dkt. No. 17; *see generally* docket sheet.)

Despite Plaintiff's awareness of his responsibility, he has failed to provide an updated address to the Court. Given Plaintiff's manifest disinterest in pursuing his claims in this action, I find that the need to alleviate congestion on the Court's docket and Defendant's interest in defending against the claims asserted by Plaintiff, outweigh his right to receive a further opportunity to be heard in this matter. As required, I have considered less-drastic sanctions, but reject them as ineffective. For example, I am persuaded that issuing an order reprimanding Plaintiff for his conduct would be futile, given that such an order would, in all likelihood, never reach Plaintiff due to his failure to provide the Court with a current address.

For each of these reasons and those set forth by Defendant in Defendant's moving papers (Dkt. No. 31), I recommend that Plaintiff's Complaint be dismissed with prejudice for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).[2]

---

[2] To the extent that the assigned District Judge disagrees with this recommendation, it is requested that Defendant's motion for summary judgment be returned to the undersigned for consideration of his arguments.

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** in its

entirety, pursuant to Fed. R. Civ. P. 41(b), based on his failure to prosecute and comply with this

Court's orders and local rules of practice; and it is further

**RECOMMENDED** that Defendant's motion to dismiss for failure to prosecute (Dkt. No.

31) be **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and

Recommendation on the docket of this case and serve a copy upon the parties in accordance with

the local rules.[3]

**NOTICE**: Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.[4]  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human*

*Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 27, 2026
   Binghamton, New York

          Miroslav Lovric
          Miroslav Lovric
          U.S. Magistrate Judge

---

[3] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[4] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).

2006 WL 4401019
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Dorothy BARNEY, Plaintiff,
v.
CONSOLIDATED EDISON COMPANY
OF NEW YORK, Defendant.

No. 99-CV-823 (DGT).
|
July 19, 2006.

**Attorneys and Law Firms**

Dorothy Barney, New York, NY, pro se.

Barbara Jane Carey, Consolidated Edison Company, New York, NY, for Defendant.

### *REPORT AND RECOMMENDATION*

GOLD, S., U.S.M.J.

### INTRODUCTION

**\*1** Plaintiff Dorothy Barney filed her complaint in this action on February 10, 1999, alleging that defendant Consolidated Edison Company of New York ("Con Ed") discriminated against her in violation of Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2e to 2000e-17, in violation of the Age Discrimination Act of 1967, as codified at 29 U.S.C. §§ 621 to 634, and in violation of the Americans with Disabilities Act of 1990, as codified at 42 U.S.C. §§ 12112 to 12117. Docket Entry 2. More than six years later, on February 28, 2005, defendant moved to dismiss the complaint for failure to prosecute and for failure to comply with court orders. Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), Docket Entry 83. In the alternative, defendant sought to close plaintiff's right to take discovery, to preclude plaintiff's expert from testifying at trial, and to continue plaintiff's deposition. *Id.* The Honorable David G. Trager has referred this motion to me for a report and recommendation. Docket Entry 87. I respectfully recommend that defendant's motion to dismiss be granted.

### BACKGROUND

Plaintiff originally filed her complaint *pro se* on February 10, 1999. Docket Entry 2. At the initial conference held on July 2, 1999, I stayed discovery to provide plaintiff an opportunity to obtain counsel. Docket Entry 17. In November of 1999, Malik Cutlar, who works with Stephen T. Mitchell, appeared on behalf of plaintiff and discovery began with a deadline of June 30, 2000. Docket Entry 20. On January 4, 2000, Mr. Mitchell filed a notice of appearance on behalf of Ms. Barney. Docket Entry dated Jan. 4, 2000. Upon application of plaintiff's counsel, the original discovery deadline was extended to November 15, 2000. Docket Entry 24.

*1. Plaintiff failed to respond to initial discovery demands.*
By letter dated February 6, 2001, defendant informed the Court that plaintiff failed to comply with discovery demands despite repeated requests. In particular, Mr. Mitchell failed to answer interrogatories served nine months prior, failed to supply executed authorizations, and failed to provide defendant with EEOC documents plaintiff had promised to provide ten months prior. Def.'s Letter dated Feb. 6, 2001. [1] Defendant's counsel, Barbara Jane Carey, noted that, without this missing discovery, she could not proceed with plaintiff's deposition. *Id.* On February 7th, Mr. Mitchell responded that he would provide documents that day. Pl.'s Letter dated Feb. 7, 2001. By letter dated February 12, 2001, defendant pointed out that Mr. Mitchell did provide some documents the previous week but they were not responsive to her prior demands.

In light of Mr. Mitchell's lengthy delay in answering discovery demands, I attempted to move this case forward by setting specific deadlines for various discovery events. Docket Entry 28. At a conference on February 21, 2001, I ordered that plaintiff's deposition would take place on April 30, 2001 and indicated that it could be adjourned only by stipulation filed with the court by April 16, 2001 and for no more than thirty days. *Id.* In addition, I ordered plaintiff's counsel to serve notices for all depositions he intended to take by April 2, 2001, for the notices to schedule the depositions during the same week as Ms. Barney's, subject to adjournment only under the same circumstances as Ms. Barney's deposition. *Id.* At this conference, Mr. Mitchell indicated that he did not anticipate calling any expert witnesses at trial. *Id.*

*2. Plaintiff failed to take discovery on the dates ordered by the court in February, 2001.*

**\*2** In violation of my February 21, 2001 ruling, plaintiff asked to move Ms. Barney's deposition back one day only three days before her scheduled deposition. Pl.'s Letter dated Apr. 27, 2001. Mr. Mitchell later agreed to proceed with Ms. Barney's deposition as scheduled. Pl.'s Second Letter of Apr. 27, 2001. At this time, Ms. Carey asserted that Mr. Mitchell never served deposition notices as required by my February 21st order. Def.'s Letter dated Apr. 27, 2001. Mr. Mitchell responded that he mailed deposition notices by the required date, as well as interrogatories and document requests, to which defendant had not responded. *Id.* At a telephone conference on April 27th, I directed defendant to respond to the discovery demands within three weeks. Docket Entry 29. I also scheduled several depositions and ruled that unavailability of counsel would not be grounds for adjourning these depositions. *Id* . I set June, 2001 as the new deadline for discovery. *Id.*

*3. Discovery remained incomplete six months after the adjourned deadline of June, 2001.*

The discovery deadline was subsequently extended several more times over the course of the following year. Docket Entries 30-34 and Endorsed Orders. At a conference on December 19, 2001, plaintiff indicated his intention to call non-party witnesses at trial. I ordered Mr. Mitchell to identify those witnesses by January 4, 2002. Docket Entry 33. Plaintiff had also now decided she would seek to offer expert testimony at trial. I set February 8, 2002 as the deadline for plaintiff's expert reports, and extended the discovery deadline to April 19, 2002. *Id.*

*4. Plaintiff failed to meet the April 19, 2002 deadline and preclusion sanctions were imposed.*

At a conference on April 25, 2002, upon learning that plaintiff had not produced her expert reports by February 8, 2002 as I had previously ordered, I ruled that plaintiff would be precluded from introducing any expert medical testimony at trial. Docket Entry 35. I further ordered plaintiff to produce any accounting expert report on pain of preclusion by July 15, 2002. *Id.* The parties had agreed on dates for several depositions to occur during May and June of 2002 and I ruled that those depositions could proceed. Docket Entries 34, 35. In light of the repeated extensions of the discovery deadline I had already granted, however, I ruled that failure of the noticing party to proceed would constitute a waiver of the right to conduct the deposition and that any failure of the noticed party to appear for a deposition might result in sanctions, including dismissal or default. Docket Entry 35.

*5. Plaintiff again failed to complete depositions during May and June of 2002.*

Despite my April 25th rulings, the depositions did not go forward as scheduled. Defendant wrote to the court in May concerning Mr. Mitchell's cancellation of the previously-scheduled deposition dates and his refusal to set new ones. Def.'s Letter dated May 29, 2002. In her letter, Ms. Carey noted that she made calls and sent letters to Mr. Mitchell over the course of the preceding month with no response. *Id.* Again I granted Mr. Mitchell additional time to reschedule depositions. *See* Docket Entry 36. During a telephone conference with the parties on June 3rd, I ordered two depositions to proceed during June and directed the parties to confer and advise my chambers within two days of dates set for the depositions of three remaining witnesses named Watkins, Correa, and Austin. Docket Entry 36. On June 10th, Ms. Carey wrote to the Court stating that Mr. Mitchell had not contacted her to schedule the depositions. Docket Entry 37. Again I intervened and set specific dates in July and September for the depositions. Docket Entry 38. I warned plaintiff that failure to proceed with the depositions of the three witnesses in issue would result in an order precluding them from testifying at trial. *Id.*

*6. Plaintiff failed to proceed with Court-ordered depositions during the summer of 2002, despite my preclusion warning.*

**\*3** Mr. Mitchell failed to take the July and September depositions as scheduled. Three days before the first scheduled deposition, the deposition of Watkins, Mr. Mitchell wrote to the Court indicating that he had transposed the witnesses and their deposition dates and wished to change the schedule. Docket Entry 39. I urged the parties to work together to reschedule the Watkins deposition and ordered the second deposition to proceed as previously scheduled. Order endorsed on Pl.'s Letter dated July 8, 2002, Docket Entry 39. The day before the second deposition, Mr. Mitchell wrote to inform the Court that he was withdrawing the witness, Correa.[2] Pl.'s Letter dated July 17, 2002. By letter dated August 6, 2002, Mr. Mitchell wrote to the Court stating that the third deposition-the deposition of Austin-would not be able to go forward as scheduled the following month due to a scheduling conflict on his part. Docket Entry 40. I granted Mr. Mitchell additional time to depose Austin. Mr. Mitchell

also indicated that there were three individuals not previously identified whom he wished to depose. *Id.*

During a telephone conference on August 12, 2002, I granted plaintiff additional time yet again and ordered that all remaining depositions needed to be held before September 24, 2002. I directed the parties to provide me with a schedule specifying the date for each remaining deposition by September 10, 2002. Docket Entry 41. By letter dated September 10th, defendant's counsel informed me that her efforts to speak with Mr. Mitchell to coordinate deposition dates had, like before, been unsuccessful. Docket Entry 42. On September 20th, Ms. Carey wrote to the Court yet again concerning her inability to speak to Mr. Mitchell to schedule depositions. As I had several times before, I intervened and afforded plaintiff additional time. At a previously scheduled conference on October 8th, I set dates for depositions of various witnesses, including-despite my prior warnings of preclusion-Austin. Docket Entry 43. I again warned that sanctions would be imposed for failure to proceed. *Id.* I set a new date for plaintiff's economic expert report and ordered that all expert depositions be completed by January 15, 2003. *Id.*

*7. Plaintiff failed to comply with the discovery deadlines set on October 8, 2002.*
During the conference on October 8th, I directed that the deposition of a witness named Donohue proceed on October 18th. This direction was made subject to the warnings described in the preceding paragraph. Nevertheless, on October 17, 2002, Mr. Mitchell requested an adjournment of the court-ordered deposition of Donohue scheduled for the following day. Docket Entry 45. I denied that request based on Mr. Mitchell's repeated requests for extensions and cancellations of depositions and held that plaintiff's right to take the Donohue deposition had now been waived. *Id.*

In a letter dated December 2, 2002, defendant informed the Court of a number of discovery deficiencies by plaintiff. Specifically, defendant alleged that Mr. Mitchell 1) failed to produce a plaintiff's witness on a court-ordered deposition date and failed to take a deposition of a defense witness; 2) failed to comply with an aspect of my order of October 8, 2002 directing plaintiff to provide Ms. Carey updated information concerning plaintiff's medical doctors; 3) failed to provide authorizations for defendant to obtain the records of two medical practitioners newly identified by plaintiff; 4) failed to provide an expert report by plaintiff's expert economist, Dr. Frank Tinari, by the court-ordered date of November

8th, or even by December 2, 2002 (the date of defendant's letter); 5) failed to comply with an April 25th order to reimburse defendant's expenses for a deposition that plaintiff cancelled without notice; and 6) failed to provide defendant with deposition transcripts. In response, Mr. Mitchell disputed some of these failures and indicated that he intended to cure any deficiencies forthwith. Pl.'s Letter dated Dec. 3, 2002. In particular, Mr. Mitchell stated that he would provide the Tinari expert report by December 20, 2002, writing that "Dr. Tinari can provide the report by that date and be available in early January for deposition." *Id.* at 2.

*8. Although granted additional time yet again, plaintiff failed to complete discovery by the deadlines set at the final discovery conference on December 20, 2002.*
**\*4** I held yet another conference on December 20, 2002. At that time, I granted Mr. Mitchell additional time to complete expert discovery, set specific dates for the depositions of certain remaining fact witnesses, and ruled that discovery was otherwise closed. Docket Entry 49. During the course of the conference, I expressed my frustration with plaintiff's counsel and issued certain rulings. First, I noted that "deadlines come and go, dates get scheduled and they're missed with regularity" by plaintiff. Tr. of Dec. 20, 2002, Docket Entry 49, at 3. Mr. Mitchell conceded that his is a "small firm and [he] do[es]n't always make deadlines." *Id.* at 11. He acknowledged that his economic expert's report was overdue, that an order to produce the report by mid-January would give him "more than enough time," and that preclusion would be appropriate if he failed to meet that deadline. *Id.* at 11-12. I ordered the report produced by January 10, 2003 on pain of preclusion. *Id.* at 14-15. I again ordered Mr. Mitchell to pay the expenses defendant incurred when Mr. Mitchell failed to appear for a scheduled deposition, and directed that the amount would double if the payment was not made by January 1, 2003. *Id.* at 16. Despite his failure to complete previously-requested discovery in a timely fashion, Mr. Mitchell made an application to take additional discovery at this conference. *Id.* at 23-27. I denied that request based on plaintiff's history of non-compliance with court-ordered discovery schedules and ordered discovery closed, except for that which had already been scheduled. *Id.* at 27-28. Citing a number of specific instances, I noted that the "vast majority of these deadline problems and scheduling problems were the result of plaintiff's failure to comply with court-ordered deadlines ." *Id.*

By letter dated February 24, 2003 defendant wrote to the Court concerning plaintiff's failure to comply with my December 20th rulings. Specifically, Ms. Carey asserted that

Mr. Mitchell 1) failed to reimburse defendant for deposition costs by the date I had ordered, 2) failed to deliver a complete set of deposition transcripts timely, 3) failed to produce a complete expert report from Dr. Tinari, plaintiff's economist, by the January 10, 2003 deadline or to produce Tinari for deposition on the scheduled date, and 4) failed to provide updated information concerning plaintiff's medical providers. I subsequently ordered Mr. Mitchell to pay double the deposition reimbursement expenses because he failed to remit payment timely to defendant as required by my December 20th ruling. Tr. of Mar. 14, 2003, Docket Entry 67, at 20.

*9. Upon plaintiff's appeal of my discovery rulings, Judge Trager granted plaintiff additional time, but plaintiff again failed to make disclosures required by the Court.*

On February 28, 2003, plaintiff filed objections to my December 20, 2002 discovery orders pursuant to Federal Rule of Civil Procedure 72. Docket Entry 56. United States District Judge David G. Trager heard argument on plaintiff's objections and concluded that my rulings were "certainly within [my] discretion" and "clearly ... proper." Tr. of Apr. 11, 2003, Docket Entry 68, at 3, 10. Although plaintiff contended that the events of September 11, 2001 were a significant factor in his missed deadlines and delays, Docket Entry 56, the record reflects that discovery was extended in the months following September 11th, granting the parties at first an additional five months to April 19, 2002, and ultimately until December 20, 2002. Docket Entries 32, 33, 48. Finally, as Judge Trager noted during oral argument on plaintiff's motion, plaintiff failed to comply with court orders on four occasions prior to September 11, 2001. Tr. of Apr. 11, 2003, Docket Entry 68, at 6.

**\*5** Nevertheless, Judge Trager granted plaintiff until June 17, 2003 to provide defendant with certain additional documents and information concerning her economic expert, Tinari. *Id.* at 32. Judge Trager also affirmed my March 14th order doubling the deposition costs, imposed as a sanction, with the caveat that Mr. Mitchell did not have to pay the additional doubled amount if he fully responded to all of the outstanding document demands by June 17th. *Id.* at 35. Lastly, Judge Trager warned he was "not going to let this thing drag out much longer.... If [Mr. Mitchell] hasn't [produced the requested documents] by June 17th, you can assume that he will walk away.... [To Mr. Mitchell:] [t]his is your last shot." *Id.* at 30, 32.

Judge Trager held another conference with counsel on June 17, 2003. At that time, defendant reported to the Court that Mr. Mitchell had failed to provide all of the outstanding discovery required by the Court. On May 5, 2003, plaintiff did produce some additional discovery materials. Pl.'s Letter dated May 5, 2003, Docket Entry 69. However, as defendant pointed out, Tinari's expert report failed to provide full case names and docket numbers when listing the prior cases in which Tinari had testified. Tr. of June 17, 2003, Docket Entry 78, at 11-15. Although Mr. Mitchell argued that he should not be required to provide the information because Tinari did not have it, Judge Trager ordered Mr. Mitchell to provide the full names of the clients on whose behalf Tinari testified. *Id.* at 14-15. Lastly, Judge Trager ordered Mr. Mitchell to provide all outstanding discovery and denied Mr. Mitchell's application for additional discovery until plaintiff's own discovery obligations were fulfilled. *Id.* at 23.

*10. Plaintiff failed to move the case forward from June, 2003 to February, 2005.*

Following the June, 2003 conference, this case failed to progress any further. No activity is reflected in the Court's records until March 11, 2004, when Mr. Mitchell wrote to Judge Trager requesting that he be permitted to proceed with discovery. Docket Entry 74. In response, Ms. Carey asserted that she still had not received all outstanding discovery, including in particular the case names for the Tinari report and certain tax returns that Judge Trager ordered plaintiff to produce at the April and June conferences the prior year. Docket Entry 75. At this juncture, plaintiff's counsel asked to be relieved of his obligation to provide the case names for the Tinari report, arguing that doing so was too burdensome. Docket Entry 76. Additionally, Mr. Mitchell requested that he be allowed to present at trial the testimony of Correa and Watkins, even though he had long ago failed to comply with court-ordered dates for their depositions which were set on pain of preclusion. *Id.* Indeed, Mr. Mitchell had represented he would *not* seek to call Correa as a trial witness when he cancelled Correa's deposition the day before it was scheduled to proceed. *Id.* Plaintiff also sought leave to present the testimony of unnamed "other witnesses" who were never previously identified in this case but apparently were deposed in another discrimination case against Con Ed brought by a plaintiff named Perez. *Id.*

**\*6** Even after plaintiff's informal letters to Judge Trager went unanswered by the Court, plaintiff failed to make any type of formal motion for relief. On November 19, 2004, I scheduled a conference for the following month to determine

the status of the case. Docket Entry 79. In a letter to the Court dated December 13, 2004, Ms. Carey indicated that she had not heard from plaintiff since the June, 2003 conference, almost eighteen months prior, except for the two letters to the Court received eight months earlier. During the status conference held on December 20, 2004, counsel for defendant asserted that she never received signed authorizations for tax returns from plaintiff despite having sent authorization forms over a year ago. Tr. of Dec. 20, 2004, Docket Entry 81, at 4. Mr. Mitchell responded that plaintiff sent the authorizations to defendant and he did not hear any further from defendant concerning the tax documents. *Id.* at 5. Ms. Carey also stated that she never received the additional information concerning Dr. Tinari's prior cases. *Id.* Mr. Mitchell acknowledged that he had not provided the additional information ordered by Judge Trager, but reaffirmed his statement that Dr. Tinari did not have the information. *Id.* at 5-6. Based on plaintiff's repeated failures to comply with court orders to move this case forward and the burdens and expense imposed on defendant as a result, I granted defendant leave to file a motion to dismiss for failure to prosecute or, in the alternative, a motion to preclude certain discovery and evidence at trial. *Id.* at 6-7. As of February 28, 2005, the date defendant filed its motion to dismiss, defendant still had not received plaintiff's federal tax documents or the completed expert report. [3]

## DISCUSSION

*A. Dismissal*

The Federal Rules of Civil Procedure provide for dismissal of an action where a party fails to obey a pretrial scheduling order or fails to obey an order to provide discovery. *See* FED.R.CIV.P. 16(f); FED.R.CIV.P. 37(b)(2); FED.R.CIV.P. 41(b). Similarly, under Federal Rule 41(b), a defendant may move to dismiss an action or claim "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." Failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics," which may consist of "repeated requests for continuances or persistent late filings of court ordered papers." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982).

Dismissal is an extreme remedy and warranted only under the most egregious circumstances. *See Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993). In severe cases, however, dismissal may be appropriate not only to penalize an attorney who conducts himself in a dilatory manner but also to deter

other attorneys from similar conduct. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U .S. 639, 643, 96 S.Ct. 2778, 2781 (1976). A dismissal triggered by an attorney's actions or inaction imposes a severe consequence on a plaintiff. Nevertheless, the Supreme Court has recognized dismissal as a just sanction for counsel's irresponsible conduct. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

**\*7** The Second Circuit has set forth five factors to be considered when determining whether the circumstances of a particular case warrant the severe sanction of dismissal under Rule 41(b):

> (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions.

*Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir.1993), *quoting Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 312 (2d Cir.1986). No one factor is dispositive, and the appropriateness of dismissal must be viewed in light of the record as a whole. [4] *Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir.2004).

*1. Duration of Plaintiff's Failures*

This factor consists of two parts: a) whether the delay was caused by plaintiff and b) whether the delay was of significant duration. *See Martens v. Thomann,* 273 F.3d 159, 180 (2d Cir.2001).

The record amply demonstrates that plaintiff was the cause of extensive delays in this case. The discovery deadline was extended several times to give plaintiff additional time to complete discovery. Plaintiff requested the first discovery

extension on June 15, 2000. Docket Entry 24. Three months after the November, 2000 deadline passed, the discovery deadline was adjourned without date after defendant notified me that plaintiff had failed to answer interrogatories served nine months ealier. [5] Def.'s Letter dated Feb. 6, 2001. The discovery extension on June 1, 2001 was granted to provide plaintiff additional time to depose witnesses. Docket Entry 30. Mr. Mitchell requested the seventh discovery extension on April 22, 2002, three days after the discovery cut-off date. Docket Entry 32.

Plaintiff was repeatedly granted substantial discovery extensions but to no avail in actually completing discovery in an efficient and expeditious manner. From February of 2001 to April of 2003, depositions repeatedly failed to go forward due to Mr. Mitchell's scheduling conflicts and other failures. The record reflects the following delays, among others, caused by Mr. Mitchell:

- Def.'s Letter dated Feb. 6, 2001 (noting that Mr. Mitchell's failure to provide discovery was delaying the taking of plaintiff's deposition)

- Pl.'s Letter dated Apr. 22, 2002, Docket Entry 34 (noting that Mr. Mitchell failed to appear for a deposition),

- Def.'s Letter dated May 29, 2002 (noting that Mr. Mitchell cancelled two scheduled deposition days only two days prior to the first scheduled date and failed to commit to dates for remaining depositions)

- Docket Entry 36 (scheduling by the Court of deposition dates),

- Docket Entry 38 (same),

- Pl.'s Letter dated July 11, 2002, Docket Entry 39 (requesting to change the deposition schedule three days before the first scheduled deposition because he had transposed deposition dates and witnesses),

**\*8** • Pl.'s Letter dated July 17, 2002 (withdrawing witness the day before the scheduled deposition)

- Pl.'s Letter dated Aug. 6, 2002 (cancelling a deposition due to Mr. Mitchell's unavailability and notifying the Court and defendant of three new witnesses to be deposed),

- Def.'s Letter dated Sept. 10, 2002 (informing the Court that defendant had not been able to speak to Mr. Mitchell to schedule depositions)

- Def.'s Letter Sept. 20, 2002 (same),

- Docket Entry 43 (scheduling by the Court of deposition dates),

- Def.'s Letter dated Dec. 2, 2002 (reporting that Mr. Mitchell failed to produce a witness for deposition and failed to take a deposition),

- Tr. of Dec. 20, 2002, Docket Entry 49, at 16 (noting that the Austin deposition had been rescheduled numerous times and that plaintiff's expert report was past due) and

- Docket Entry 55 (requesting additional time to produce expert for deposition when the deadline for the deposition was the following day and the scheduled date for the deposition was three days earlier).

Although many of plaintiff's requests were made at the eleventh hour or even after the deadline had passed, I granted nearly every one of Mr. Mitchell's applications for additional time. *See, e.g.,* Docket Entries 24, 30, 34, 35, 40, 41, 48, 55. *But see* Docket Entry 45 (denying plaintiff's application to adjourn the court-ordered deposition scheduled for the following day) and Tr. of Dec. 20, 2002, Docket Entry 49, at 27 (denying plaintiff's application to take additional discovery and closing discovery). In sum, the record clearly reflects that Mr. Mitchell was the cause of significant delay.

In contrast, defendant contributed minimally to the delays. It is true that some of the discovery extensions were requested or at least consented to by defendant. *See* Def.'s Letter dated Nov. 16, 2000; Docket Entries 31, 32, 42. I note that these extensions were early in the case and were minor and isolated incidents. At least one of defendant's requests for an extension was necessitated by plaintiff's failure to comply with discovery demands and orders. *See, e.g.,* Def.'s Letter dated Sept. 10, 2002, Docket Entry 42. Mr. Mitchell, of course, evidenced a serious "pattern of dilatory tactics" beginning around April of 2002. *See, e.g.,* Docket Entries 34-43, 45, 46, 48, 55, 59. As discussed throughout, plaintiff, not defendant, is substantially at fault for the appreciable delays in this case. *See Peart,* 992 F.2d at 461 (affirming dismissal after finding plaintiff's counsel's behavior "particularly egregious" for failing to comply with

two court orders, even though "both parties in fact were responsible for many delays").

Plaintiff's argument that defendant Con Ed contributed to the delay in this case and her reliance on *Jackson v. City of New York,* 22 F.3d 71 (2d Cir.1994), is misguided. In *Jackson,* the Court found "no instance on the record in which the delays were caused solely by the actions of [plaintiff] or her attorney." 22 F .3d at 75. Unlike *Jackson,* there are numerous instances here where delays were caused solely by plaintiff. In arguing that defendant was also responsible for delays, plaintiff cites only to a single example involving a conference held on April 27, 2001. Plaintiff's Memorandum of Law Opposing Defendant's Motion to Dismiss ("Pl.'s Mem.") p. 7. At this conference, plaintiff contended that defendant failed to provide responses to discovery demands and refused to produce certain witnesses for deposition the following week. Ms. Carey explained, however, that she failed to provide the requested discovery only because she never received plaintiff's discovery demands and deposition notices. Def.'s Letter dated Apr. 27, 2001. *See also* Tr. of Apr. 11, 2003, Docket Entry 68, at 7-9. Moreover, the April 27, 2001 conference was instigated by Mr. Mitchell's untimely request to adjourn plaintiff's deposition, which was in plain violation of my February 21st order that plaintiff's deposition could not be rescheduled absent stipulation by the parties and notice to the court at least two weeks prior to the deposition. *See* Pl.'s First Letter of Apr. 27, 2001. Thus, plaintiff's argument that defendant is also responsible for the delays in this case is completely lacking in merit.

 **\*9** The delays caused by plaintiff were also significant in length. The original discovery deadline was June 30, 2000. Two and a half years later, after countless extensions, I ordered discovery finally closed December 20, 2002. At the time the instant motion was filed in February of 2005, this case was six years old. Yet Mr. Mitchell argued then, as he does now, that he still needs additional discovery. *See* Pl.'s Mem. pp. 8-9; Pl's Letter dated May 11, 2006, Docket Entry 90. If Mr. Mitchell had conducted discovery with any degree of diligence, he would undoubtedly have realized the need for additional discovery much earlier in the case and all discovery could have been completed long ago. I made this point to plaintiff's counsel years ago. *See* Tr. of Dec. 20, 2002 at 28. Yet even now, this case is not fully discovered.

Moreover, Mr. Mitchell's repeated failures to provide a complete expert report from Dr. Tinari and the tax returns sought by defendant have led to a substantial delay and

there is no indication that plaintiff will ever produce the discovery in issue. Mr. Mitchell was first put on notice in February of 2003 that required information from Tinari and various documents concerning his expert report had not been produced. Def.'s Letter dated Feb. 24, 2003. Judge Trager twice ordered plaintiff to perfect Tinari's expert report and provide defendant with her tax returns. Tr. of Apr. 11, 2003 at 30, 32; Tr. of June 17, 2003 at 14-15. As of today's date, plaintiff has still not fully complied with these discovery obligations. Indeed, in a letter dated January 19, 2005, Mr. Mitchell indicated that it would take several months to receive copies of Ms. Barney's tax returns but that he would forward them to Ms. Carey as soon as he received them. As of May 15, 2006, Ms. Carey still has not received the official IRS tax returns. Def.'s Letter dated May 15, 2006, Docket Entry 91, at 1.

Plaintiff's dilatory conduct over several years warrants dismissal. *See Lyell Theatre Corp.,* 682 F.2d at 42-43 (affirming dismissal of case involving two years of inactivity and seven years of dilatory conduct); *Drake,* 375 F.3d at 255 (finding that delay of seventeen months was "significant" but dismissal not warranted for other reasons); *Europacific Asset Mgmt. Corp. v. Tradescape Corp.,* 2005 WL 3182528, at \*6 (S.D.N.Y. Nov. 29, 2005) (noting that courts have frequently found delays of less than two years "unreasonable"). In particular, Mr. Mitchell's nearly complete lack of activity during the eighteen months following the conference before Judge Trager in June, 2003-a period of inactivity that might still be ongoing had this Court not convened a conference sua sponte-favors dismissal.

*2. Notice*

Plaintiff had ample notice that further delay and failure to comply with orders could result in dismissal of the case. At a conference on April 25, 2002, I warned that failure to produce witnesses for depositions could result in a recommendation of dismissal. The depositions did not go forward as scheduled, yet I granted Mr. Mitchell additional time to complete discovery. At the April 25, 2003 conference, Judge Trager indicated that dismissal for failure to prosecute would be appropriate if Mr. Mitchell did not provide the requested documents by June 17, 2003. *See* Tr. of Apr. 11, 2003, Docket Entry 68, at 32 ("If [Mr. Mitchell] hasn't [produced the requested documents] by June 17th, you [defendant's attorney] can assume that he [plaintiff's attorney] will walk away.... This is your last shot."). These warnings from the Court were sufficient to put plaintiff on notice dismissal for failure to prosecute would follow if Mr. Mitchell failed

to comply with discovery demands and orders and caused further delay.[6] *See Link,* 370 U.S. at 632-33, 82 S.Ct. at 1389-90 (noting that a Rule 41(b) dismissal does not require prior notice or a hearing); *Jackson,* 22 F.3d at 75-76 (suggesting that one warning may be sufficient to provide notice, depending upon the circumstances of the case).

 **\*10** Moreover, defendant also put Mr. Mitchell on notice of the risk of dismissal for failure to prosecute. Defendant first requested that the case be dismissed for plaintiff's failure to comply with discovery orders in June of 2002. Def.'s Letter dated June 10, 2002, Docket Entry 37. In February of 2003, defendant again requested that this case be dismissed for discovery violations. Def .'s Letter dated Feb. 24, 2003. And clearly, Mr. Mitchell was put on notice at the December 20, 2004 conference where I granted defendant's leave to file the instant motion. Finally, he was put on notice when defendant filed the instant motion. *See Stoenescu v. Jablonsky,* 162 F.R.D. 268, 271 (S.D.N.Y.1995) (filing of motion to dismiss put plaintiff on notice). Yet he has not, even to this date, complied with all outstanding discovery orders.

In short, Mr. Mitchell has been on notice for at least three years that this case was at risk of dismissal. If he had provided the documents and information as ordered by the Court at any time over the course of the last three years, dismissal might indeed be too harsh a sanction. Mr. Mitchell, however, has failed to take the necessary steps to avoid dismissal, despite ample opportunity to do so. *Cf. Drake,* 375 F.3d at 255-56 (finding *inter alia* that the district court abused its discretion in dismissing the case because plaintiff had no opportunity to cure the deficiency prior to dismissal). In sum, plaintiff has repeatedly refused to comply with court orders even after notice that this case might be dismissed. This factor weighs in favor of dismissal.

### 3. Prejudice

"Prejudice may be presumed as a matter of law ... [depending] on the degree to which the delay was lengthy and inexcusable." *Drake,* 375 F.3d at 256. *See also Lyell Theatre Corp.,* 682 F.2d at 43 ("[I]n cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater."). Plaintiff's "pattern of dilatory tactics" in this case has led to years of delay and a case that is still not fully discovered.

The delay was also inexcusable. I find unacceptable Mr. Mitchell's routine attempts to excuse his non-compliance by claiming he has made scheduling errors and cannot meet deadlines because he is a solo practitioner. *See, e.g.,* Docket Entries 39, 40; Tr. of Dec. 20, 2002 at 11; Tr. of Apr. 11, 2003 at 3. And there is simply no excuse for his failure to communicate with opposing counsel to schedule depositions. *See* Def.'s Letters dated May 29, 2002 and Sept. 20, 2002; Docket Entries 37, 42. Lastly, plaintiff's only argument for the delay in not providing the expert discovery is that he should be relieved of his obligation to do so because it is a burdensome request. Pl.'s Mem. p. 2. Judge Trager implicitly rejected this argument, as do I. *See* discussion *infra* pp. 23-25. In sum, the lengthy and inexcusable delay in this case leads to a presumption of prejudice.

 **\*11** Moreover, the Second Circuit has noted that defendants "have an interest in prompt resolution of suits in which they have been named, particularly where ... racial bias is alleged." *Copeland v. Rosen,* 194 F.R.D. 127, 132 (S.D.N.Y.2000) ("*Copeland* I"), remanded by 25 Fed. Appx. 17 (2d Cir.2001), after remand *Copeland v. Rosen,* 208 F.R.D. 507 (S.D.N.Y.2002) ("*Copeland II* "). As in *Copeland,* Con Ed has a significant interest here in prompt resolution of this case, in which racial bias and other forms of discrimination have been alleged.

Furthermore, defendant has been prejudiced in fact. Defendant notes that two of the Con Ed employees involved in this litigation have since retired and now reside out of state. Def.'s Mem. p. 7. Moreover, the events underlying this litigation occurred six to ten years ago and undoubtedly memories have faded and documents have been lost. *Id.* *See Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 194-95 (2d Cir.1999) (finding a substantial likelihood that evidence had become unavailable and witnesses' recollections had diminished because the events occurred more than a decade before dismissal); *White v. Mitchell,* 2005 WL 775899, at \*3 (E.D.N.Y. Apr. 6, 2005) (finding prejudice where the events occurred over five years prior to the dismissal). In addition, plaintiff's delays and failures to abide by court orders have caused defendant to incur substantial legal fees, particularly as a result of preparing for depositions that failed to proceed as scheduled, making repeated applications to the court, and attending numerous court conferences. *See LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 210 (2d Cir.2001) (recognizing that prejudice includes increased litigation costs); *Peart,* 992 F.2d at 462 (finding prejudice where, *inter alia,* a party expends time and money preparing a case). Indeed, a careful review of the docket sheet in this action reveals that, as a result of plaintiff's conduct, defendant

was required to submit at least *seventeen* discovery letters [7] and to attend at least the same number of court conferences. [8] In contrast, a typical case of this magnitude might reasonably be expected to require two or three discovery letters and three or four court conferences. Moreover, the activity on the docket sheet does not, of course, reflect the many phone calls and letters Ms. Carey exchanged with Mr. Mitchell attempting to move discovery forward.

Defendant has also been prejudiced in preparing to defend against plaintiff's economic expert. Mr. Mitchell first notified defendant that he had retained Dr. Tinari on September 18, 2002-three and a half years into this litigation and seven months after the original deadline for producing expert reports had expired. Def.'s Letter dated Sept. 20, 2002, at 2; Docket Entry 33. I then set a new deadline of November 8, 2002 for Dr. Tinari's report. *See* Docket Entry 43. When even that deadline was missed, I extended the time for Dr. Tinari's report to January 10, 2003, and recommended that Tinari's testimony be precluded if the report were not provided to defendant by that date. Docket Entry 48.

**\*12** Plaintiff apparently did provide a report from Tinari on or about January 10, 2003. *See* Affirmation of Barbara Jane Carey ("Carey Aff."), Docket Entry 71, ¶ 2 and Ex. 1. Defendant has contended since the report was initially produced that it was deficient in several respects. One of the deficiencies noted by defendant was that the report did not include any information about other cases in which Tinari had testified as an expert witness. Such disclosure is, of course, required by Federal Rule of Civil Procedure 26(a)(2)(B).

Apparently in response to defendant's complaints, plaintiff submitted additional materials, including some information about Tinari's prior experience as an expert witness, on or about March 10, 2003. Carey Aff. Ex. 3. Even this information-in addition to being provided 60 days after the final date for production of the Tinari report on pain of preclusion-was deficient, in that it listed only the date of the report, the name and telephone number of the attorney for whom it was prepared, the name of the judge and the court where the case was heard, and plaintiff's gender and surname. *Id.* Courts construing Rule 26(a)(2)(B) have held that

> [t]he identification of 'cases' at a minimum should include the courts or administrative agencies, the names of the parties, the case number,

and whether the testimony was by deposition or at trial. Such information should be sufficient to allow a party to review the proceedings to determine whether relevant testimony was given. With this information, a party should be able to determine the type of claim presented and locate any recorded testimony.

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 2003 WL 22227959, \*2 (S.D.N.Y. Sept. 26, 2003), *citing Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 682 (D.Kan.1995). The information provided by plaintiff did not include case numbers or the names of the parties (other than the surname of one party). Although plaintiff has argued that Tinari does not have the necessary information and that it would be unduly burdensome for plaintiff to obtain it, it is the duty of an expert, particularly one who routinely testifies, to keep records that fully comply with Rule 26, and it is counsel's duty to ensure that the expert he retains complies with the Federal Rules. *See Doblar v. Unverferth Mfg. Co., Inc.,* 185 F.R.D. 258, 261-62 (D.S.D.1999); *Elgas v. Colorado Belle Corp.,* 179 F.R.D. 296, 299-300 (D.Nev.1998). Moreover, the information plaintiff did produce included the name of each lawyer who had previously retained Tinari as an expert, and there is no reason why Mr. Mitchell could not have contacted those attorneys to obtain the required information.

Defendant emphasized the deficiencies in Tinari's report during oral argument before Judge Trager on April 11, 2003 in connection with plaintiff's objections to my discovery orders. *See* Tr. of Apr. 11, 2003 at 16-18. Judge Trager ordered plaintiff to provide all of the information requested by defendant, including the list of cases in which Tinari previously testified as an expert, within 30 days, and stated that plaintiff would have to "walk away" if the documents had not been produced by the time of the next conference, which Judge Trager set for June 17, 2003. *Id.* at 18, 32. On June 17, 2003, upon learning that plaintiff had not provided the additional information about Tinari's prior testimony, Judge Trager ordered plaintiff to provide, at a minimum, the full names of the parties on whose behalf Tinari had testified. Tr. of June 17, 2003 at 14-15. Plaintiff has yet to provide this information and defendant persuasively argues that it has been prejudiced as a result. Defendant's counsel affirms that she "attempted to locate the cases in which [Dr. Tinari] said he had testified, using Westlaw[, but her] search was both unduly

lengthy and often fruitless." Affirmation of Barbara Carey in Support of Defendant's Reply, dated Mar. 30, 2005, ¶ 12.

**\*13** Defendant has also been prejudiced by plaintiff's failure to obtain and provide all of her tax returns. [9] Plaintiff seeks to hold defendant liable in damages for her termination. Defendant argues, among other things, that plaintiff was collecting disability benefits during the period for which she seeks to recover lost wages. Accordingly, plaintiff's income tax returns-which should reflect any income earned or disability benefits received after being terminated by Con Ed-are highly relevant to plaintiff's claim for damages. Although plaintiff finally provided tax "transcripts" in January, 2005 containing some income tax information, these documents do not appear to contain all of the details, such as sources of income, one would expect to find on an official tax return. Additionally these documents are not signed by plaintiff and are therefore less useful than tax returns would be both as substantive evidence and for purposes of impeachment.

In sum, plaintiff has failed to negate the presumption of prejudice, and the record demonstrates that defendant has suffered substantial actual prejudice. This factor weighs heavily in favor of dismissal.

### 4. Balancing Court Congestion and Plaintiff's Due Process Right

Plaintiff's right to an opportunity to be heard is significant and weighs against dismissal. "There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas v. Miles,* 84 F.3d 532, 535-36 (2d Cir.1996) (dismissal not warranted on *pro se* case pending for twenty-two months), *cited in LeSane,* 239 F.3d at 210. As noted above, Judge Trager and I have been called upon to resolve a remarkable number of disputes, and to grant extensions countless times, in this relatively straightforward case. Having said this, though, this factor weighs against dismissal because an adjudication on the merits would be preferable.

### 5. Consideration of Lesser Sanctions

I have considered but decline to recommend imposing lesser sanctions in this case for two reasons. First, plaintiff has repeatedly failed to comply despite warnings that lesser sanctions would be imposed and even despite the imposition of lesser sanctions. Second, no sanction short of

dismissal would sufficiently redress the prejudice suffered by defendant.

Plaintiff's failures to comply with specific court orders, and in particular those orders that warned of sanctions for failure to comply, may be summarized as follows:

- During a conference held on April 25, 2002, I set court-ordered dates for depositions and warned that failure to take the deposition would constitute a waiver of that discovery and failure to produce a witness would result in sanctions, including dismissal or default. The depositions did not go forward as ordered. At this conference, I also precluded plaintiff from presenting any medical expert testimony at trial because of her failure to produce reports from her medical experts.

**\*14** • On June 21, 2002, I set court-ordered dates for the depositions of three witnesses-Watkins, Correa, and Austin-and ordered that plaintiff would be precluded from calling those witnesses at trial if he failed to produce them on the scheduled dates. These depositions did not go forward as ordered. Nevertheless, in April of 2004, Mr. Mitchell requested that he be allowed to call as trial witnesses Watkins and Correa, who were never deposed in this litigation. Docket Entry 76.

- On December 20, 2002, I ordered plaintiff to produce his economic expert report by January 10, 2003 on pain of preclusion. Plaintiff failed to provide the complete expert report on time.

- On April 11, 2003, Judge Trager ordered plaintiff to provide certain discovery by June 17, 2003 or "walk away." Mr. Mitchell failed to provide all of the ordered discovery.

- On June 17, 2003, Judge Trager ordered plaintiff to provide the first names of the parties on whose behalf her economic expert previously testified. Plaintiff has failed to provide defendant with any additional information concerning Dr. Tinari's prior testimony.

As summarized above, the Court has warned of and has in fact imposed lesser sanctions, but with no effect upon Mr. Mitchell's willingness to follow this Court's discovery orders. To the contrary, Mr. Mitchell's attitude towards compliance appears unchanged. Moreover, a cursory review of cases in the Eastern District of New York suggests that Mr. Mitchell has repeatedly received warnings and lesser sanctions over the years with little effect on his responsiveness to directions

from the court or his diligence in prosecuting cases on behalf of his clients. [10] Thus, any sanction short of dismissal would not sufficiently penalize Mr. Mitchell for his serious "pattern of dilatory tactics" in this case and would not likely prompt compliance with the Court's orders. *See, e.g., Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 666 (2d Cir.1980) (affirming dismissal "given [plaintiff's] complete intransigence in the face of a clear court order"); *Copeland II,* 208 F.R.D. at 513 (dismissing case after finding "inexcusable delay and indifference" and noting that plaintiff's counsel "continually failed to comply with [court] orders").

In considering lesser sanctions, I am mindful of the Second Circuit's caution to consider whether the party or counsel are at fault and to impose sanctions accordingly. *Dodson v. Runyon,* 86 F.3d 37, 40 (2d Cir.1996).

> In deciding on the suitability of lesser sanctions and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the delay.... [T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer.

**\*15** *Id.* at 40. In this case, it appears that Mr. Mitchell, and not his client, is the sole cause of the delay. The Second Circuit, however, did not rule out dismissal even based upon an attorney's actions where those actions cause a defendant significant prejudice.

> [A]t least *absent prejudice,* dismissal for failure to prosecute is inappropriate where the fault clearly lay in the lawyer's failure to attend to his client's business, *and* the court failed to consider alternative sanctions.... [W]here opposing parties are found to

have been *meaningfully prejudiced* by a plaintiff's delay, this factor speaks strongly in favor of dismissal, and may well override the hardship to plaintiff.

*Id.* at 40-41 (emphasis added).

Dismissal is warranted in this case because defendant has suffered significant actual prejudice. *See* discussion *supra* pp. 21-26. *Cf. Tubner v. West,* 1996 WL 1057149, at *7 (E.D.N.Y. Dec. 17, 1996) (finding that plaintiff's lawyer disregarded her professional responsibilities and caused the delay but denying dismissal because case was less than one year old and defendants had not suffered prejudice). Any other sanction will not adequately redress this prejudice. As discussed above, there is "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Link,* 370 U.S. at 633, 82 S.Ct. at 1390. Nevertheless, Mr. Mitchell is hereby ordered to serve a copy of this Report and Recommendation on plaintiff and to provide proof of service to the Court. In this way, plaintiff herself is put on notice that her case is about to be dismissed and she will have an opportunity to be heard, if she chooses, before Judge Trager decides whether to adopt the recommendations in this report. [11] *See Dodson,* 86 F.3d at 40, fn.4.

*6. Record as a Whole*

In sum, an analysis of the five factors identified in Peart supports dismissal for failure to prosecute. The record as a whole amply demonstrates Mr. Mitchell's repeated failures to comply with court orders and the significant delays which occurred as a result. *See Lyell,* 682 F.2d at 43 (affirming dismissal in case that involved seven years of "commitments not honored, delinquent inactivity, adjournments and delay," including two years of inactivity, and noting that "[w]e have affirmed dismissals in cases far less egregious than this"); *Copeland I,* 194 F.R.D. at 127 (finding that "dismissal [wa]s warranted by counsel's chronic delays and her disregard for the orders of the Court" over the course of four years); *Cognotec Servs. Ltd. v. Morgan Guar. Trust, Co.,* 1999 WL 627411, at *2 (S.D.N.Y. Aug. 18, 1999) (dismissing case involving five and one-half years of failure to adequately prosecute, including nineteen months of inactivity); *Johnson v. M. Melnick & Co., Inc.,* 1996 WL 239994, at *9 (S.D.N.Y. May 8, 1996) (dismissing case after plaintiff engaged in "a pattern of dilatory tactics" for four years, including the

violation of multiple court orders, despite "ample opportunity to remedy his conduct"). Here the record reflects six years of dilatory conduct by plaintiff despite the repeated threat of lesser sanctions and even the threat of dismissal. Mr. Mitchell requested and was granted dozens of extensions and adjournments to no avail in completing his discovery, failed to produce witnesses for depositions, failed to appear to take depositions, cancelled depositions at the last minute, failed to communicate with defendant's counsel, and failed to provide an adequate expert report in a timely fashion. Mr. Mitchell's habitual defiance is astounding considering the repeated extensions of time he was given to comply with this Court's orders.

 **\*16** Based on the record as a whole, which clearly demonstrates a serious pattern of discovery violations by plaintiff causing significant delay, I respectfully recommend dismissal for failure to prosecute pursuant to Federal Rule 41(b).

Dismissal would also be an appropriate sanction under Rule 37(b)(2)(C). *See Altschuler v. Samsonite Corp.,* 109 F.R.D. 353, 356 (E.D.N.Y.1986) (recommending a default judgment pursuant to Rule 37 "because of [defendant's] consistent failure to cooperate in this litigation in good faith and to obey a discovery order of which it had proper notice"). Indeed, courts consider the same factors applicable to Rule 41(b) when considering dismissal pursuant to Rule 37. *See Banjo v. United States,* 1996 WL 426364, at \* 5 (S.D.N.Y. July 30, 1996).

*B. Preclusion*

If my recommendation that this case be dismissed is not adopted, I respectfully recommend in the alternative that plaintiff be precluded from calling Dr. Tinari as an expert witness at trial, be precluded from offering expert testimony from any medical doctor or other expert witness, and be precluded from calling Correa, Watkins, or any other fact witness she did not identify and produce for deposition prior to the final discovery conference I held on December 20, 2002. [12]

In addition, I respectfully recommend 1) that defendant be allowed to re-open plaintiff's deposition for the limited purpose of inquiring about plaintiff's Social Security file, 2) that discovery be otherwise closed 3) that Mr. Mitchell be directed to pay forthwith double the reimbursement amount he untimely paid to defendant, and 4) that defendant be awarded the attorney's fees and costs it incurred making this motion.

## CONCLUSION

For all these reasons, I respectfully recommend that defendant's motion to dismiss be granted. In the alternative, I recommend the lesser sanctions set forth in the two preceding paragraphs.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable David G. Trager within ten days of receiving this Report and Recommendation and, in any event, on or before August 7, 2006. In order to give Ms. Barney an opportunity to be heard before her case is dismissed, I direct that Mr. Mitchell provide a copy of this Report to his client and provide proof of service to this Court. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 4401019

---

## Footnotes

1    Letters referenced by date without a Docket Entry number were submitted by counsel to chambers but never filed with the Court. All are available in the Court's chambers file.

2    As discussed below, in April of 2004, plaintiff sent a letter to United States District Judge David G. Trager seeking to offer Correa and Watkins "and other witnesses [who were deposed] in the *Perez [v. Consolidated*

*Edison Co. of New York]* case" as witnesses at trial, stating that they were not able to be deposed during the discovery period. Pl.'s Letter dated Apr. 2, 2004, Docket Entry 76. The Correa and Watkins depositions were court-ordered at the June 21, 2002 conference on pain of preclusion. Mr. Mitchell cancelled both of these depositions at the last minute. Moreover, Mr. Mitchell was on notice of Correa as a potential witness even before he began representing Ms. Barney. Indeed, Mr. Mitchell represented Correa in her own litigation against Con Ed. *Correa v. Consolidated Edison Co. of New York,* 98-CV-4450 (JG) (E.D.N.Y.). If Judge Trager does not adopt my recommendation to dismiss this case, I respectfully recommend that plaintiff be precluded from calling Correa, Watkins, or any other *Perez* witnesses at trial.

3       By letter dated January 19, 2005, plaintiff provided defendant with tax "transcripts" and indicated that she would forward copies of the actual submissions once she received them. According to the submissions attached to the January 19th letter, Mr. Mitchell requested the transcripts December 28, 2004. I note that Mr. Mitchell apparently did not make the request to the Internal Revenue Service until almost six years into discovery, even though plaintiff's claim included economic damages and his economic damages expert apparently reviewed plaintiff's tax returns. As of March of 2006, plaintiff still had not provided any additional tax documents to defendant. Docket Entry 88. Although plaintiff did produce some additional tax documents on March 29, 2006, defendant continues to assert that these documents are insufficient because they are not copies of official IRS tax returns and many were not signed by Ms. Barney. Docket Entries 90, 91.

4       Moreover, a court may consider the merits of the action when determining whether dismissal is appropriate. *See Dosunmu v. U.S.,* 361 F.Supp.2d 93, 99-100 (E.D.N.Y.2005). Although I do not give it much weight, I briefly note that defendant has raised a serious question as to whether plaintiff's claim for damages has merit. Def.'s Mem. p. 5. Plaintiff was discharged from Con Ed on September 10, 1998. Defendant has apparently developed evidence that Ms. Barney began receiving Social Security disability benefits based on a claim that she was unable to work because of a disabling condition beginning September 10, 1998. *See* Tr. of Mar. 14, 2003, at 7-11. It seems unlikely that plaintiff could receive damages for lost pay and pension benefits in this case, arguing that she could have continued working at Con Ed, and could at the same time receive Social Security benefits by claiming that she could no longer work due to a disability during the same time period.

5       Absent a court order or stipulation to the contrary, interrogatory answers are due thirty days after the service of the interrogatories. FED.R.CIV.P. 33(b)(3).

6       Mr. Mitchell is only too familiar with the sanctions of preclusion and dismissal under Federal Rules 37 and 41. *See, e.g., Smalls v. Port Auth. of New York and New Jersey,* 120 Fed. Appx. 396 (2d Cir.2005) (involving same plaintiff's counsel and affirming dismissal for failure to prosecute); *Waters v. New York Univ. Med. Ctr.,* 04-CV-3174 (ERK) (E.D.N.Y. June 30, 2006) (dismissing action for failure to prosecute and to comply with court orders after warning Mr. Mitchell twice that he risked dismissal); *Moore v. Consolidated Edison Co. of New York,* CV-00-7384 (PAC) (March 8, 2006) (granting same plaintiff's counsel additional time to complete interrogatory responses after outlining plaintiff's extensive delays and extension requests, sanctioning Mr. Mitchell in the amount of $500 for the most recent delay, and warning plaintiff's counsel that future untimely submissions may lead to dismissal); *Butler v. Acosta,* CV-01-4347 (CBA) (E.D.N.Y. July 16, 2003) (dismissing case for failure to prosecute with same plaintiff's attorney); *Carr v. Queens-Long Island Med. Group, P.C.,* 2003 WL 169793 (S.D.N.Y. Jan. 24, 2003) (finding a "pattern of disregard for discovery obligations" and sanctioning Mr. Mitchell the expenses incurred by defendants in their contempt motion); *Evans v. Port Auth. of New York and New Jersey,* 201 F.R .D. 96 (S.D.N.Y.2001) (precluding same plaintiff's counsel from offering any evidence from 75 persons belatedly identified).

7       Docket Entries 37, 42, 54, 60, 70-71, 75, and 77 and letters not docketed dated February 6, 2001, February 12, 2001, April 27, 2001, May 29, 2002, July 8, 2002, September 20, 2002, December 2, 2002, December 4, 2002, February 24, 2003, and March 10, 2003.

8    Fourteen of the seventeen conferences were held before me (Docket Entries 18, 20, 27, 28, 29, 30, 33, 35, 36, 38, 41, 43, 45, and 48), and three were held before Judge Trager (Docket Entries 51, 66 and 73).

9    There is a factual dispute as to whether plaintiff provided the signed tax authorizations to defendant back in July of 2003. It is clear, however, that defendant advised plaintiff in early 2004 that it had not received the authorizations and that plaintiff did nothing to rectify it. Docket Entry 75.

10    Indeed, a review of cases in this district indicates that Mr. Mitchell's conduct in this case is no aberration. *See, e.g., Reed v. Prospect Gardens,* 97-CV-2889 (DGT) (Docket Entry 6) (warning of preclusion if plaintiff's counsel failed to submit timely expert report); *Thelusma v. New York City Bd. of Educ.,* 02-CV-4446 (FB) (Docket Entry 8) (noting a failure to appear at a prior conference, granting discovery extensions and noting that "plaintiff has not proceeded diligently in this case, the fault appears to lie with counsel," sanctioning Mr. Mitchell for failing to appear at his client's deposition, and noting that "plaintiff's counsel has not heeded prior deadlines"); *Douglas v. Bovis Lend Lease LMB, Inc.,* 02-CV-5304 (ARR) (Docket Entry 14) (ordering plaintiff to provide discovery on pain of sanctions); *Lloyd v. Interfaith Nutrition Network,* 03-CV-178 (ADS) (Docket Entry 18) (ordering plaintiff to produce requested discovery, which was due more than 90 days prior, and warning plaintiff that failure to comply could result in sanctions); *Armstrong v. Brookdale Univ. Hosp. and Med. Ctr.,* 02-CV-5017 (CPS) (Docket Entries 12, 28) (ordering Mr. Mitchell on two separate occasions to show cause why the case should not be dismissed for failure to prosecute); *Armstrong* (Docket Entry 26) (ordering Mr. Mitchell to show cause why he should not be sanctioned for his failure to comply with a court order to provide releases and his failure to appear at a conference).

11    By letter dated May 8, 2006, Ms. Barney wrote to the Court inquiring of the status of the motion and stating that "Mr. Mitchell and I have fulfilled all [discovery] requests including sending Con Edison copies of all my tax returns." Although it is clear that she is aware of the pending motion to dismiss, it does not appear that she is fully aware of the court's past efforts to move this case forward or of the degree to which her own attorney's actions are responsible for the substantial delays.

12    Federal Rule of Civil Procedure 37(b) provides that

> if a party ... fails to obey an order to provide or permit discovery, the court ... may make such orders in regard to the failure as are just, [including] ... (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:24-cv-00969-FJS-ML Document 36 Filed 04/27/26 Page 25 of 40

Dansby v. Albany County Correctional Facility Staff, Not Reported in F.Supp. (1996)

1996 WL 172699
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DANSBY, Plaintiff,
v.
ALBANY COUNTY CORRECTIONAL
FACILITY STAFF, Defendant.

No. 95-CV-1525 (RSP/RWS).
|
April 10, 1996.

**Attorneys and Law Firms**

Kevin Dansby pro se.

*ORDER*

POOLER, District Judge.

**\*1** In an order and report-recommendation dated December 8, 1995, Magistrate Judge Smith noted that Dansby had not signed the complaint he filed to commence this action. Magistrate Judge Smith directed Dansby to submit an affidavit which contained all of the representations delineated in Fed.R.Civ.P. 11(b) with respect to his complaint. The magistrate judge recommended dismissal of Dansby's action if Dansby failed to comply with the terms of the report-recommendation within forty-five (45) days from the date of the service.

On December 12, 1995, a copy of the report-recommendation was served on Dansby by regular mail to his last known address, the Albany County Jail. On December 22, 1995, the jail returned the report-recommendation marked "Return to Sender -- No Forwarding Order on File."

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1962). The district court may exercise its discretion to dismiss when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* 1994 W.L. 9688, at \*1 (S.D.N.Y. 1994).

Moreover, a plaintiff has the duty to inform the Court of any address changes. As the Fifth Circuit has stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Perkins v. King,* No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985) (citing *Williams v. New Orleans Public Service, Inc.,* 728 F.2d 730 (5th Cir. 1984); *Wilson v. Atwood Group,* 725 F.2d 255 (5th Cir. 1984) (en banc)); *see Wehlen v. Foti et al.,* 1987 W.L. 8039, at \*1-2 (E.D.La. 1987); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without Dansby filing the affidavit described above or notifying the court of his current address. Therefore, it is hereby

ORDERED, that this action is dismissed. *See* Rules 5.4(b)(4) and 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail at his last known address.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 172699

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 2621796
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michelle A. LEBARRON, Plaintiff,
v.
WARREN COUNTY SHERIFF'S OFFICE, Nathan
H. York, James A. Lafarr, Marlo Barboza, Defendants.

No. 1:13–CV–1572 (GTS/CFH)
|
Signed 04/06/2016

**Attorneys and Law Firms**

Michelle A. LeBarron, P.O. Box 1486, 5 Mast Court, Berlin,
Maryland 21811, Plaintiff pro se.

Lemire, Johnson Law Firm, P.O. Box 2485, 2534 Route 9,
OF COUNSEL: GREGG T. JOHNSON, ESQ., BRADLEY
J. STEVENS, ESQ., Malta, New York 12020, Attorneys for
Defendants.

**REPORT–RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** In this action plaintiff *pro se* Michelle A. LeBarron
("plaintiff") alleges that, between March 3, 2005, the date
on which she filed a gender discrimination complaint with
the Equal Employment Opportunity Commission ("EEOC")
against the Warren County Sheriff's Office, and July 22,
2011, the date on which she was terminated from her job
as a corrections officer, defendants discriminated against her
based on her gender. Plaintiff further alleges that defendants
retaliated against her based on her filing of the EEOC
complaint and the fact that the complaint was resolved
in her favor in 2009. Dkt. No. 1 ("Compl."). Since the
commencement of this action, there has been extensive
motion practice, which resulted in the dismissal of many of
the claims in the complaint. *See* Dkt. No. 33. This action is
presently proceeding only on plaintiff's claims that defendant
County Sheriff's Office discriminated against her based on her
gender in violation of Title VII, to the extent the claim is based
on events occurring after April 16, 2011, and that defendants
York, LaFarr, and Marlo Barboza discriminated against her
based on her gender in violation of 42 U.S.C. § 1983 and the
Fourteenth Amendment.

Presently pending is defendants' motion to dismiss for failure
to prosecute pursuant to Federal Rules of Civil Procedure
("Fed. R. Civ.P.") 41 and 37. Dkt. No. 50. Plaintiff has not
responded to the pending motion. For the reasons set forth
below, is recommended that defendants' motion to dismiss for
failure to prosecute be granted.

**I. Background**

Plaintiff commenced this action on December 20, 2013 by the
filing of a complaint and motion to proceed *in forma pauperis*.
*See* Compl., Dkt. No. 2. On March 5, 2014, defendant Ernest
Barboza filed a motion to dismiss pursuant to Fed.R.Civ.P.
12(b)(6). Dkt. No. 13. On April 24, 2014, defendants
Warren County Sheriff's Office, Nathan York, James LaFarr,
Marlo Barboza, Michael Gates, Albert Mayday, Wayne
Farmer, Daniel Clifford, Michael Feldeison, Steven Farmer,
Christopher Perilli, Michael Gordon, and Daniel Kelly filed
a motion to dismiss pursuant to Fed.R.Civ.P. 12(b) and (c).
Dkt. No. 22. Plaintiff filed opposition to the motion to dismiss.
Dkt. No. 29.

By Decision and Order dated May 13, 2015, the Court
dismissed with prejudice and without leave to amend the
following claims: (1) the individual County defendants
discriminated against her based on her gender in violation
of Title VII; (2) the individual County defendants retaliated
against her based on her filing of an EEOC complaint in
violation of Title VII; (3) defendant Warren County Sheriff's
Office retaliated against her based on her filing of an EEOC
complaint; (4) County defendants deprived her of substantive
due process in violation of 42 U.S.C. § 1983 and the
Fourteenth Amendment to the Constitution of the United
States; (5) defendant York wrongfully released her closed
disciplinary hearing charges and results to the media in
violation of Section 50–a of the New York State Civil Rights
Act; and (6) plaintiff's demand for punitive damages against
defendant Warren County Sheriff's Office. Dkt. No. 33. The
Court conditionally dismissed without further order of the
court, unless, within thirty days of the Decision and Order,
plaintiff filed an amended complaint to correct the defects
in the following claims: (1) defendant Trooper Barboza
retaliated against plaintiff based on her EEOC complaint (and
internal complaints) in violation of 42 U.S.C. § 1983 and
the First Amendment; (2) defendants County Sheriff's Office,
Gates, Maday, Farmer, Clifford, Feldeison, Farmer, Perilli,
Gordon, and Kelly discriminated against her based on her

gender in violation of 42U.S.C. § 1983 and the Fourteenth Amendment; (3) defendant Warren County Sheriff's Office discriminated against her based on her gender in violation of Title VII, to the extent the claim is based on events occurring before April 16, 2011; (4) defendant Warren County Sheriff's office retaliated against her based on her filing of an EEOC complaint in violation of Title VII; and (5) the individual County defendants retaliated against her based on her filing of an EEOC complaint in violation of 42 U.S.C. § 1983 and the First Amendment. *Id.* at 28. Finally, the Court denied defendants' motion to dismiss plaintiff's claim that the Warren County Sheriff's Office discriminated against her based on her gender in violation of Title VII, to the extent that such claim is based upon events occurring after April 16, 2011, and her claim that defendants York, LaFar, and Marlo Barboza discriminated against her based on her gender in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. *Id.* at 29.

**\*2** On May 19, 2015, the undersigned issued a text order scheduling the Rule 16 conference for June 11, 2015. Dkt. No. 34. On June 11, 2015, the Court issued a Uniform Pretrial Scheduling Order which, among other things, directed that discovery be completed by October 30, 2015, and directed each party to file a report regarding the status of discovery by September 8, 2015. Dkt. No. 39.

On September 18, 2015, the Court issued a notice directing each of the parties to file a status report by October 2, 2015. Dkt. No. 41. Defendants filed a status report on September 28, 2015. Dkt. No. 42. Plaintiff failed to file a status report.

By letter motion dated December 4, 2015, defendants requested a brief extension of the discovery deadline. Dkt. No. 43. On December 8, 2015, the Court granted the extension request and issued a notice scheduling a discovery conference for December 21, 2015. Dkt. Nos. 44, 45. The notice provided: "please be advised that Plaintiff's failure to attend conferences and participate in discovery may result in dismissal of the claim." Dkt. No. 45. The notice further provided that plaintiff could appear in person or telephonically. *Id.* A copy of that notice was served on plaintiff by regular mail. *See id.* Plaintiff failed to appear for that conference. *See* Dkt. entry dated 12/21/15.

On December 21, 2015, the Court issued a text notice setting a briefing schedule for the defendants to file a motion to dismiss, which directed that any such motions be filed by January 19, 2016. *See* text not. dated 12/21/15. Plaintiff was directed to file any response to that motion by February 5,

2016. *Id.* Defendants' reply was due by February 12, 2016. *Id.* A copy of that text notice was served on plaintiff by regular mail. *Id.* The text notice, sent to the plaintiff at the address appearing on the Court docket, was returned to the Court as undeliverable. Dkt No. 49.

On December 23, 2015, the attorney for defendant Ernest Barboza filed a letter motion requesting, based upon plaintiff's failure to file an amended complaint by June 13, 2015 as directed by this Court's Decision and Order dated May 13, 2015, that the Court issue judgment in favor of Ernest Barboza. Dkt. No. 47. On December 23, 2015, the Court issued a text order granting in part and denying in part defendant Barboza's letter request. Dkt No. 48. The order directed the Clerk of the Court to terminate Ernest Barboza from this action and further provided that judgment will be entered at the conclusion of this matter. Dkt. No. 48. A copy of that text order was served upon plaintiff by e-mail, as plaintiff has ECF filing status.

On January 15, 2016, defendants Marlo Barboza, LaFarr, Warren County Sheriff's Office, and York filed a motion for an Order dismissing plaintiff's complaint in its entirety pursuant to Fed.R.Civ.P. 41 and 37, with prejudice. Dkt. No. 50. Plaintiff's response to that motion was due by February 5, 2016, with any reply to be filed by February 8, 2016. Dkt. No.51. Plaintiff has not filed a response to the pending motion to dismiss.

On January 22, 2016, defendants Clifford, Steven Farmer, Wayne Farmer, Feldeison, Gates, Gordon, Kelly, Maday, and Perilli filed a letter motion asking to be terminated as defendants in this action. Dkt. No. 54. On January 22, 2016, the Court issued a text order granting that letter motion and directing that those defendants be terminated from this action. Dkt. No. 54.

## II. Discussion [2]

**\*3** Fed.R.Civ.P. 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedure] or a court order ..." *See Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1962); *Baptiste v. Sommers,* 768 F.3d 212, 216 ( 2d Cir. 2014); *see also* N.D.N.Y. L.R. 41.2(b). Since a Rule 41(b) dismissal "is a harsh remedy ... [it] is appropriate only in extreme situations." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir. 1966) (citations omitted). Furthermore, where the plaintiff is *pro se,*

Case 9:24-cv-00969-FJS-ML    Document 36    Filed 04/27/26    Page 29 of 40

Lebarron v. Warren County Sheriff's Office, Not Reported in Fed. Supp. (2016)

"courts should be especially hesitant to dismiss for procedural deficiencies ..." *Spencer v. Doe,* 139 F.3d 107, 112 ( 2d Cir. 1998) (quoting *Lucas,* 84 F.3d at 535); *see also Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d. Cir. 2006). A determination whether to dismiss an action pursuant to Rule 41(b) involves consideration of:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply will result in dismissal, (3) whether the defendants are likely to be prejudiced by for the delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas,* 84 F.3d at 535 (citing *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir. 1994)) (additional citations omitted).

A review of this case's procedural history shows that the complaint was filed on December 20, 2013. Dkt. No. 1. As such, over two years have elapsed since the filing of this action, yet virtually no discovery has been conducted as a result of plaintiff's failure to comply with this Court's scheduling order.

On March 20, 2014, the undersigned issued a text order which directed that the parties file a civil case management plan and exchange mandatory disclosures by April 28, 2014. Dkt. No. 19. Although the moving defendants sent plaintiff their initial disclosure on June 1, 2015, plaintiff has never served any initial disclosure in this matter. Dkt. No. 50–1 at 6. On September 25, 2015, defendants submitted a demand for production of documents and a notice for examination before trial to plaintiff by way of a letter dated September 25, 2015. Dkt. No. 43. Plaintiff's deposition was scheduled for October 26, 2015. As the deposition approached, defendants made numerous efforts to contact plaintiff to confirm her attendance. Dkt. No. 50–1 at 6. On October 22, 2015 defendants received an e-mail from plaintiff which acknowledged her failure to respond to document

demands, advised that she would not appear for a deposition, and noted that she would be responding directly to the Court. Dkt. No. 43, Exh B. Plaintiff has never contacted the Court to address her deposition or failure to respond to defendants' document requests. Defendants have not received any communication from plaintiff since her October 22, 2015 e-mail. Dkt. No. 50–1 at 7.

On December 8, 2015, this Court issued a notice, served on plaintiff by regular mail, scheduling a discovery conference for December 21, 2015. Dkt. No. 45. The notice specifically advised plaintiff that her failure to attend conferences and participate in discovery may result in the dismissal of her claim. *Id.* Even after having been advised of the consequences of her failure to participate in discovery and attend conferences, and permitting plaintiff the opportunity to appear by telephone, plaintiff failed to appear for the conference.

**\*4** As a result of plaintiff's failure to serve mandatory disclosure as directed by this Court's May 20, 2014 Order, failure to respond to defendants' discovery requests and her failure to appear for a deposition, defendants have been denied access to information they need in order to prepare a proper defense in this matter. *Shannon v. Gen. Elec. Co., 186* F.3d 186,195 (2d. Cir. 1999). Plaintiff's failure to provide document discovery and failure to appear for deposition have significantly delayed the resolution of this matter, thereby contributing to the Court's congestion.

The final consideration in determining whether to grant the motion to dismiss for failure to prosecute is an assessment of whether there is a sanction less drastic than dismissal. [3] Mindful of the principles of law pronounced above, the undersigned determines that the dismissal of plaintiff's complaint is the appropriate result in this matter. Here, plaintiff has completely and intentionally disregarded the Uniform Pretrial Scheduling Order which issued on June 11, 2015. Dkt. No. 39. That order directed, among other things, that all discovery be completed by October 30, 2015. As noted, plaintiff has failed to provide defendants with any discovery and has refused to appear for deposition. Even after the Court advised plaintiff that her failure to attend conferences and participate in discovery may result in the dismissal of this action, plaintiff failed to attend the Court conference. *See* Dkt. entry dated Dec. 21, 2015. Plaintiff has also failed to submit any opposition to this motion to dismiss for lack of prosecution. In addition, it appears that the address which plaintiff provided to the Court is no longer valid as a

**Lebarron v. Warren County Sheriff's Office, Not Reported in Fed. Supp. (2016)**

Case 9:24-cv-00969-FJS-ML   Document 36   Filed 04/27/26   Page 30 of 40

Text Order mail to plaintiff at that address was returned as undeliverable. Dkt. No. 49. Plaintiff has failed to comply with her duty to update the Court as to any changes of address.

In recommending the dismissal of this action, the undersigned is aware that dismissal is particularly harsh remedy, especially when invoked against a *pro se* plaintiff. *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (2d. Cir. 1986); *Sec. and Exch. Comm'n v. Research Automation Corp.,* 521 F.2d 585, 588–89 (2d. Cir. 1975). Given plaintiff's apparent abandonment of this action and complete refusal to comply with this Court's orders, the Court finds that the imposition of a lesser sanction would have no effect on Plaintiff or this litigation which has been pending since December 20, 2013. *See* Dkt. No. 1.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED** that defendants' motion to dismiss for failure to prosecute (Dkt. No. 50) be **GRANTED**; and that the complaint (Dkt. No. 1) be dismissed in its entirety; and it is

**ORDERED**, that copies of this Report–Recommendation and Order be served on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have **fourteen (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**\*5  IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 2621796

---

### Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 (b) and N. D.N.Y.L.R. 72.3 (c).

2    All unpublished opinions cited to by the Court in this Report–Recommendation and Order are, unless otherwise noted, attached to this Report–Recommendation and Order.

3    Defendants request, in the alternative, (Dkt No. 50), that dismissal be considered under Rule 37 for plaintiff's failure to attend the deposition. *See* FED. R. CIV. P. 37. Since "courts consider the same factors applicable to Rule 41(b) when considering dismissal pursuant to Rule 37[']" no additional analysis is needed. *Barney v. Consol. Edison Co. of New York,* No. 99–CV–823 (DGT), 2006 WL 4401019, at \*16 (E.D.N.Y. July 19, 2006 (citations omitted).

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 2636293
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michelle a LEBARRON, Plaintiff,
v.
WARREN COUNTY SHERIFF'S OFFICE; Nathan H.
York; James A. Lafarr; and Marlo Barboza, Defendants.

1:13-CV-1572 (GTS/CFH)
|
Signed 05/06/2016

**Attorneys and Law Firms**

MICHELLE A. LeBARRON, P.O. Box 1486, 5 Mast Court, Berlin, Maryland 21811, Plaintiff, Pro Se.

LEMIRE, JOHNSON & HIGGINS, LLC, P.O. Box 2485, 2534 Route 9, OF COUNSEL: GREGG T. JOHNSON, ESQ., BRADLEY J. STEVENS, ESQ., Malta, New York 12020, Counsel for Defendants.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* employment discrimination action filed by Michele LeBarron ("Plaintiff") against the Warren County Sheriff's Office and three of its employees ("Defendants") arising from Plaintiff's termination as a corrections officer in July 2011, are the following: (1) Defendants' motion to dismiss Plaintiff's Complaint for failure to prosecute and/or comply with a Court Order pursuant to Fed. R. Civ. P. 41(b) and/or as a sanction for failure to appear at her deposition and failure to comply with a Court Order pursuant Fed. R. Civ. P. 37(b),(d); and (2) United States Magistrate Judge Christian F. Hummel's Report-Recommendation recommending that Defendants' motion be granted. (Dkt. Nos. 46, 53.) None of the parties have filed objections to the Report-Recommendation, and the deadline by which to do so has expired. (*See generally* Docket Sheet.) After carefully reviewing the relevant papers herein, including Magistrate Judge Hummel's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, Defendants' motion is granted, and Plaintiff's Complaint is dismissed in its entirety.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 57) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 50) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety; and it is further

**ORDERED** that the Clerk of the Court shall enter Judgment for Defendants and close this action.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 2636293

---

**Footnotes**

1    When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

Case 9:24-cv-00969-FJS-ML    Document 36    Filed 04/27/26    Page 32 of 40

**LeBarron v. Warren County Sheriff's Office, Not Reported in Fed. Supp. (2016)**

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4246443
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.

No. 9:04-CV-0358 (FJS/GHL).
|
Nov. 27, 2007.

**Attorneys and Law Firms**

Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*DECISION AND ORDER*

FREDERICK J. SCULLIN, Senior District Judge.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

*REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf .'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

**I. DEFENDANTS' MOTION TO DISMISS**

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22,

2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss.[1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious."[2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b).[3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed

to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

### A. Failure to Prosecute

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[5]

**\*3** As a general rule, no single one of these five factors is dispositive.[6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[7]

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action.[8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order

warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

**B. Failure to Comply with Order of Court**

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal ... for failure to comply with an order of the court is a matter committed to the discretion of the district court."[9] The correctness of a dismissal for failure to comply with an order of the court is determined in light of five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[10]

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal for the same reasons as described above in Part II.A. of this Report-Recommendation. I note that the Order that Plaintiff has violated is the Court's Order of April 15, 2004, wherein the Court ordered Plaintiff, *inter alia,* to keep the Clerk's Office apprised of his current address. (Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff that ***"[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action."*** (*Id.*) I

note also that, on numerous previous occasions in this action, Plaintiff violated this Order, resulting in delays in the action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 & Dkt. Entry for 12/15/06 [indicating that mail from the Court to Plaintiff was returned as undeliverable].)

**\*4** As a result, I recommend that, should the Court decide to deny Defendants' motion to dismiss, the Court exercise its authority to dismiss Plaintiff's Amended Complaint *sua sponte* for failure to prosecute and/or failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 86) be **GRANTED%;** and it is further

**RECOMMENDED** that, in the alternative, the Court exercise its inherent authority to **SUA SPONTE DISMISS** Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)..

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4246443

---

**Footnotes**

1    *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at \*7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious* ") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at \*2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M .J.) (applying prior version of Rule 7.1 [b][3], but recommending dismissal because of plaintiff's failure to

respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

2    *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at *8.

3    Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

4    *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

5    *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

6    *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

7    *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at *2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

8    It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

9    *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) [citations omitted].

10   *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) [citations omitted].

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 4

2007 WL 4246443
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.

No. 9:04-CV-0358 (FJS/GHL).
|
Nov. 27, 2007.

**Attorneys and Law Firms**

Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

### *DECISION AND ORDER*

FREDERICK J. SCULLIN, Senior District Judge.

**\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf .'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

### I. DEFENDANTS' MOTION TO DISMISS

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22,

2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss. [1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b). [3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455 F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed

to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

### A. Failure to Prosecute

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution. [4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions. [5]

**\*3** As a general rule, no single one of these five factors is dispositive. [6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. [7]

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action. [8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

### B. Failure to Comply with Order of Court

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal ... for failure to comply with an order of the court is a matter committed to the discretion of the district court."[9] The correctness of a dismissal for failure to comply with an order of the court is determined in light of five factors:

(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[10]

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal for the same reasons as described above in Part II.A. of this Report-Recommendation. I note that the Order that Plaintiff has violated is the Court's Order of April 15, 2004, wherein the Court ordered Plaintiff, *inter alia,* to keep the Clerk's Office apprised of his current address. (Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff that ***"[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action."*** (*Id.*) I

note also that, on numerous previous occasions in this action, Plaintiff violated this Order, resulting in delays in the action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 & Dkt. Entry for 12/15/06 [indicating that mail from the Court to Plaintiff was returned as undeliverable].)

**\*4** As a result, I recommend that, should the Court decide to deny Defendants' motion to dismiss, the Court exercise its authority to dismiss Plaintiff's Amended Complaint *sua sponte* for failure to prosecute and/or failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 86) be ***GRANTED%;*** and it is further

**RECOMMENDED** that, in the alternative, the Court exercise its inherent authority to ***SUA SPONTE DISMISS*** Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)..

### All Citations

Not Reported in F.Supp.2d, 2007 WL 4246443

---

### Footnotes

1       *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at \*7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious* ") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at \*2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M .J.) (applying prior version of Rule 7.1 [b][3], but recommending dismissal because of plaintiff's failure to

respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at \*2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at \*3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

2    *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at \*8.

3    Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

4    *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

5    *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

6    *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

7    *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at \*2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

8    It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

9    *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) [citations omitted].

10    *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) [citations omitted].

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.